UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

          Plaintiff,

          v.

ARDAGH GROUP S.A.,
COMPAGNIE DE SAINT-GOBAIN, and
SAINT-GOBAIN CONTAINERS, INC.,

          Defendants.

Case No. 13-CV-1021 (RMC)

## ANSWER AND DEFENSES
## OF DEFENDANT ARDAGH GROUP S.A.

Defendant Ardagh Group S.A. ("Ardagh") by and through its undersigned counsel, hereby furnishes this Answer to Plaintiff's Complaint For Preliminary Injunction Pursuant to Section 13(b) of the Federal Trade Commission Act filed July 2, 2013 ("Complaint").

### INTRODUCTORY STATEMENT

The Commission's case is based on a simple but flawed premise: the contention that glass containers are an insular part of nationwide beer and liquor container markets, and the consolidation of three "majors" to two would wreak competitive havoc. That premise is demonstrably false for at least three independent reasons. First, the allegation that glass containers constitute an independent relevant market for antitrust purposes has been specifically rejected by the United States Supreme Court (nearly 50 years ago) and the very same Commission that voted out this flawed complaint. Cans and glass compete – vigorously – and the very existence of cans, plastics and other containers as ready alternatives act as a constraint on any market power over pricing the Commission hopes to

1

conjure here.  Second, the heavy weight of glass containers, and the resulting high cost of shipping, means that there is no single nationwide market for glass containers.  A glass plant on the West Coast is not a substitute for a glass plant on the East Coast, and a hypothetical monopolist acting in one region would be unable to exercise market power in another.  Third, the Commission wholly ignores the incredible market power of customers for beer and spirits containers.  These are markets dominated by big brewers and distillers, which provide active and powerful constraints on price.  Either independently or taken together, these facts make clear that the transaction will not harm the customer.  To the contrary, the transaction at issue produces substantial efficiencies – most of which will be shared with customers in the form of lower prices – that the Commission wholly and willfully ignores.  At most, the transaction restores competitive equilibrium, not market power, to a beleaguered industry.  No injunction should issue.

## NATURE OF THE CASE

1. Ardagh admits that it proposes to acquire Saint-Gobain Containers, Inc. ("Saint-Gobain").  Ardagh admits that it manufactures and sells glass containers to Brewers and Distillers who fill the glass containers with beer and spirits products.  On information and belief, Ardagh admits that Saint-Gobain and Owens-Illinois, Inc. ("O-I") also produce glass containers.  In all other respects, Ardagh denies the allegations in Paragraph 1.

2. Ardagh denies the allegations in Paragraph 2.

3. Ardagh denies the allegations in Paragraph 3.

4. Ardagh denies the allegations in Paragraph 4, except that glass container plants are expensive to build and that regulatory approvals are required.

5. Ardagh is without knowledge and information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 5 and therefore denies them. Ardagh admits the second sentence of Paragraph 5. In all other respects, the allegations in Paragraph 5 are legal conclusions to which no response is required. To the extent a response is required, Ardagh denies the allegations in Paragraph 5.

## JURISDICTION AND VENUE

6. The allegations in Paragraph 6 are legal conclusions to which no response is required. To the extent a response is required, Ardagh denies the allegations in Paragraph 6.

7. The allegations in Paragraph 7 are legal conclusions to which no response is required. To the extent a response is required, Ardagh denies the allegations in Paragraph 7.

8. The allegations in Paragraph 8 are legal conclusions to which no response is required. To the extent a response is required, Ardagh denies the allegations in Paragraph 8.

9. The allegations in Paragraph 9 are legal conclusions to which no response is required. To the extent a response is required, Ardagh denies the allegations in Paragraph 9.

## THE PARTIES

10. Ardagh admits the allegations in Paragraph 10.

11. Ardagh admits that it is a Luxembourg public limited liability corporation (société anonyme) incorporated and existing under the laws of the Grand Duchy of Luxembourg, having its registered office at 56, rue Charles Martel, L-2134 Luxembourg.

Ardagh admits that its 2012 global sales were approximately $4.8 billion and that it owns nine glass container plants located in seven states in the U.S.  In all other respects, Ardagh denies the allegations in Paragraph 11.

12. On information and belief, Ardagh admits the first four sentences of Paragraph 12.  Ardagh is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 12 and therefore denies them.

## THE ACQUISITION

13. Ardagh admits the allegations in Paragraph 13, except that it denies that the acquisition price is $1.7 billion.

14. Ardagh admits the allegations in Paragraph 14, except states that it has stipulated that it will not consummate the Acquisition until this Court's decision on the Commission's motion for preliminary injunction.

15. The allegations in Paragraph 15 are legal conclusions to which no response is required.  To the extent a response is required, Ardagh denies the allegations in Paragraph 15.

16. Ardagh is without knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 16 and therefore denies them.

## BACKGROUND – GLASS CONTAINERS

17. Ardagh admits that certain glass container manufacturers produce glass containers in a variety of shapes and sizes for food and beverage products.  In all other respects, Ardagh denies the allegations in Paragraph 17.

18. Ardagh admits that glass containers can guard against oxygen invasion, maintain the original flavor of the product packaged by the container, are chemically inert,

4

and are 100% recyclable. In all other respects, Ardagh denies the allegations in Paragraph 18.

19.    Ardagh admits that it does not manufacture flat window glass, table glass, specialty pharmaceutical glass or industrial glass in the United States. In all other respects, Ardagh denies the allegations in Paragraph 19.

## INDUSTRY DYNAMICS

20.    Ardagh admits that it has nine glass container plants in the United States. On information and belief, Ardagh admits that O-I has 17 glass container plants in the U.S. and two in Canada and that Saint-Gobain has 13 glass container plants in the U.S. In all other respects, Ardagh denies the allegations in Paragraph 20.

21.    Ardagh admits that it entered the U.S. glass container industry in 2012 with its acquisition of Leone Industries and Anchor Glass Container Corporation. Ardagh further admits that its proposed acquisition of Saint-Gobain would be its third acquisition of a glass container manufacturer in the U.S. within two years. In all other respects, Ardagh denies the allegations in Paragraph 21.

22.    Ardagh admits that there are a number of other glass container manufacturers operating in the U.S., including Arkansas Glass, Piramal, Anchor Hocking, Gallo Glass, Bennu Glass and Gerresheimer Glass. In all other respects, Ardagh denies the allegations in Paragraph 22

23.    On information and belief, Ardagh admits that Gallo Glass is a subsidiary of E. & J. Gallo Winery and that Gallo Glass principally supplies wine and spirits bottles to E. & J. Gallo. Ardagh further admits on information and belief that Rocky Mountain Bottle Company is a joint venture between MillerCoors, LLC ("MillerCoors") and O-I that

exclusively supplies beer bottles to MillerCoors. On information and belief, Ardagh admits that Anheuser-Busch InBev ("AB InBev") owns and operates the Longhorn Glass plant in Texas and states on information and belief that AB InBev also recently acquired four glass container plants producing beer bottles in Mexico through its acquisition of Modelo. In all other respects, Ardagh denies the allegations in Paragraph 23.

24. On information and belief, Ardagh admits that Vitro and Fevisa are Mexican glass container manufacturers and that both export glass containers to the United States. In all other respects, Ardagh denies the allegations in Paragraph 24.

25. Ardagh admits that the U.S. glass container industry has changed significantly over the last 30 years, and states that plant closures have taken place in response to a significant reduction in demand for glass containers as customers have shifted to nonglass packaging. Ardagh denies the allegations in the second sentence of Paragraph 25, except admits that in 1983 there were 23 glass container manufacturers operating in the United States. Ardagh is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the number of plants operated by each manufacturer and therefore denies them. To the extent that Paragraph 25 purports to quote from or extract the contents of Ardagh's business documents, Ardagh respectfully refers the Court to those documents for their complete and accurate contents and context. To the extent the Complaint alleges the quoted statement is an admission by Ardagh, this allegation is denied. In all other respects, Ardagh denies the allegations in Paragraph 25.

26. Ardagh admits that the glass container industry has been plagued with excess capacity as customers shifted significant portions of demand from glass containers to nonglass containers. To the extent that Paragraph 26 purports to quote from or extract

the contents of Ardagh's or Saint-Gobain's business documents, Ardagh respectfully refers the Court to those documents for their complete and accurate contents and context. To the extent the Complaint alleges any quoted statement is an admission by Ardagh, this allegation is denied. In all other respects, Ardagh denies the allegations in Paragraph 26.

27. Ardagh admits on information and belief that U.S. domestic glass container production capacity declined as customer demand shifted from glass containers to nonglass containers and the reduced demand could no longer support the existing capacity. Ardagh also admits that since emerging from its last bankruptcy in 2006, Anchor has followed a strategy (sometimes referred to as "value over volume") whereby Anchor sought to sell products only at prices that allow it to sustain its business in the long run, rather than pursuing sales volume at prices that would not enable Ardagh to recover its full costs. To the extent that Paragraph 27 purports to quote from or extract the contents of Ardagh's or Saint-Gobain's business documents, Ardagh respectfully refers the Court to those documents for their complete and accurate contents and context. To the extent the Complaint alleges the quoted statement is an admission by Ardagh, this allegation is denied. In all other respects, Ardagh denies the allegations in Paragraph 27.

28. Ardagh admits that after Anchor's emergence from bankruptcy in 2006 it sought and obtained provisions in multi-year contracts with its significant customers providing for pass-through of cost increases and cost reductions and surcharges for natural gas. These provisions shared the upside and downside risks of significant changes in input costs with multi-year customers, gave customers more transparency into production costs, and better assured customers of sustainable long-run supply. To the extent that Paragraph 28 purports to quote from or extract the contents of Ardagh's business

documents, Ardagh respectfully refers the Court to those documents for their complete and accurate contents and context. To the extent the Complaint alleges the quoted statement is an admission by Ardagh, this allegation is denied. In all other respects, Ardagh denies the allegations in Paragraph 28.

29. Ardagh admits that it competes for glass container contracts against Saint-Gobain and O-I, as well as against other U.S. glass container, imported glass container, and nonglass packaging manufacturers. To the extent that Paragraph 29 purports to quote from or extract the contents of Ardagh's or Saint-Gobain's business documents, Ardagh respectfully refers the Court to those documents for their complete and accurate contents and context. To the extent the Complaint alleges any quoted statement is an admission by Ardagh, this allegation is denied. In all other respects, Ardagh denies the allegations in Paragraph 29.

### THE RELEVANT PRODUCT MARKETS

30. Ardagh denies the allegations in Paragraph 30.

31. Ardagh admits that beer and spirits together account for over 60% of U.S. glass container demand. Ardagh denies that spirits are an important driver for U.S. glass container demand, since they represent only approximately 4% of 2012 glass container shipments. Ardagh is without knowledge and information sufficient to form a belief as to the truth of the allegations regarding the value of glass containers purchased by Brewers annually and therefore denies them. Ardagh denies that nonglass packaging is not in the relevant product market and states that increases in the relative value propositions of glass and nonglass containers cause shifts in Brewers' container purchasing decisions in the long

run, making price increases unprofitable for glass container producers. In all other respects, Ardagh denies the allegations in Paragraph 31.

32. Ardagh denies that Brewers and Distillers do not view other packaging materials as interchangeable for glass containers and states that Brewers and Distillers can and do package their products in both glass and nonglass containers without loss of sales volume or brand identity. Ardagh denies that the existence of nonglass packaging has not impacted its pricing behavior and states that its introduction of price-adjustment formulae and surcharges for commodity price movements is consistent with contracting practices for aluminum and plastic packaging. Ardagh lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 32 and therefore denies them.

33. Ardagh denies the allegations in the first and second sentences of Paragraph 33, except admits that many Brewers sell beer packaged in both glass and nonglass containers. Ardagh admits that it forecasts demand for craft beer as growing, but states that much of the increased consumer demand will be for craft beer in nonglass packaging, with only modest growth in glass volumes. Ardagh denies that it forecasts demand for glass bottles for beer for the two largest Brewers as stable, and states on knowledge and belief that demand for glass bottles from AB InBev has declined substantially in 2013 and is expected to decline further in the future. In all other respects, Ardagh denies the allegations in Paragraph 33.

34. Ardagh denies the allegations in Paragraph 34.

35. Ardagh denies the allegations in the first sentence of Paragraph 35. Ardagh admits that price is just one factor in a Distiller's decision to switch from glass to plastic

containers, but states that spirits customers' ability to switch to plastic containers for some or all of their sizes or brands constrains Ardagh's pricing and also spurs it to compete on nonprice dimensions of competition – such as innovation and service – for products remaining in glass. Ardagh denies that any Distillers have completely converted all their products to plastic from glass, since most Distillers have multiple sizes and brands, some of which they may convert and others of which they may leave in glass. Ardagh admits that once a Distiller converts a certain product completely to plastic, that volume rarely reverts to glass, but states that Distillers' ability to selectively move certain sizes and products to plastic provides a significant long-run competitive constraint on glass container manufacturers. In all other respects, Ardagh denies the allegations in Paragraph 35.

36. Ardagh denies that it does not compete head-to-head with nonglass packaging. Ardagh admits that it competes against other glass container manufacturers in particular requests for proposals for the supply of glass containers, but denies that the ability of Brewers and Distillers to switch to nonglass packaging does not also act as a constraint. To the extent that Paragraph 36 purports to quote from or extract the contents of Ardagh's business documents, Ardagh respectfully refers the Court to those documents for their complete and accurate contents and context. To the extent the Complaint alleges the quoted statement is an admission by Ardagh, this allegation is denied. In all other respects, Ardagh denies the allegations in Paragraph 36.

37. To the extent that Paragraph 37 purports to quote from or extract the contents of Ardagh's business documents, Ardagh respectfully refers the Court to those documents for their complete and accurate contents and context. To the extent the

Complaint alleges the quoted statement is an admission by Ardagh, this allegation is denied. In all other respects, Ardagh denies the allegations in Paragraph 37.

## THE RELEVANT GEOGRAPHIC MARKET

38. Ardagh admits that the relevant geographic market in which to analyze the competitive effects of the Acquisition is no broader than the United States. Ardagh notes that the Complaint does not allege what the geographic market is, only what it is not, and hence fails to allege an essential element of a prima facie violation of Section 7 of the Clayton Act. In all other respects, Ardagh denies the allegations in Paragraph 38.

## MARKET CONCENTRATION AND THE ACQUISITION'S PRESUMPTIVE ILLEGALITY

39. Ardagh denies the allegations in Paragraph 39.

40. Ardagh denies the allegations in the first sentence of Paragraph 40. The second and third sentences of Paragraph 40 contain legal conclusions to which no response is required. To the extent a response is required, Ardagh denies the allegations in Paragraph 15. Moreover, the Complaint fails to allege the dimensions of the relevant geographic market. In all other respects, Ardagh denies the allegations in Paragraph 40.

## ANTICOMPETITIVE EFFECTS – THE ACQUISITION WOULD LIKELY LEAD TO ANTICOMPETITIVE COORDINATION

41. Ardagh denies the allegations in Paragraph 41.

42. Ardagh denies the allegations in Paragraph 42.

43. To the extent that Paragraph 43 purports to quote from or extract the contents of Ardagh's or Saint-Gobain's business documents, Ardagh respectfully refers the Court to those documents for their complete and accurate contents and context. To the extent that the Complaint alleges any quoted statements are admissions by Ardagh, this

11

allegation is denied. In all other respects, Ardagh denies the allegations in Paragraph 43, except admits that O-I is publicly traded.

44. Ardagh denies the allegations in Paragraph 44. To the extent that Paragraph 44 purports to quote from or extract the contents of Ardagh's business documents, Ardagh respectfully refers the Court to those documents for their complete and accurate contents and context. To the extent that the Complaint alleges the quoted statements are admissions by Ardagh, this allegation is denied.

45. Ardagh denies the allegations in Paragraph 45. To the extent that Paragraph 45 purports to quote from or extract the contents of Saint-Gobain's business documents, Ardagh respectfully refers the Court to those documents for their complete and accurate contents and context.

**ANTICOMPETITIVE EFFECTS – THE ACQUISITION WILL ELIMINATE DIRECT COMPETITION BETWEEN ARDAGH AND SAINT-GOBAIN**

46. Ardagh denies the allegations in Paragraph 46 of the Complaint and states that there is very limited head-to-head competition between Ardagh and Saint-Gobain for Brewer or Distiller customers because of differences in the geographic location of Ardagh and Saint-Gobain plants with capabilities to serve different customer groups and capacity constraints.

47. Ardagh denies the allegations in Paragraph 47 of the Complaint.

48. Ardagh denies the allegations in Paragraph 48. To the extent that Paragraph 48 purports to quote from or extract the contents of Ardagh's or Saint-Gobain's business documents, Ardagh respectfully refers the Court to those documents for their

complete and accurate contents and context.  To the extent the Complaint alleges any quoted statements are admissions by Ardagh, this allegation is denied.

49. Ardagh admits that it competes against all competitors, including all glass container manufacturers and manufacturers of nonglass packaging, to offer customers more innovative products and better service.  In all other respects, Ardagh denies the allegations in Paragraph 49.

50. Ardagh denies the allegations in Paragraph 50 of the Complaint.  In particular, with respect to the synergy estimates for the Acquisition, Ardagh denies that any savings are due to any anticompetitive plant closures and states that its estimates include projected increases in efficiency that will increase output.  To the extent that Paragraph 50 purports to refer to the contents of Ardagh's business documents, Ardagh respectfully refers the Court to those documents for their complete and accurate contents and context.

## ENTRY BARRIERS

51. Ardagh denies the allegations in Paragraph 51.

## EFFICIENCIES

52. Ardagh denies the allegations in Paragraph 52.  Ardagh's business documents and testimony of its executives demonstrate significant efficiencies that will be derived from the Acquisition.  These efficiencies are merger-specific and supported by Ardagh's extensive experience in making 12 significant acquisitions of rigid packaging manufacturing businesses in Europe and the U.S. since 1999.

**LIKELIHOOD OF SUCCESS ON THE MERITS,
BALANCE OF EQUITIES, AND NEED FOR RELIEF**

53. The allegations in Paragraph 53 are legal conclusions to which no response is required. To the extent a response is required, Ardagh denies the allegations in Paragraph 53.

54. Ardagh denies the allegations in Paragraph 54.

55. Ardagh denies the allegations in Paragraph 55.

56. Ardagh denies the allegations in Paragraph 56.

57. Ardagh denies the allegations in Paragraph 57.

**DEFENSES**

Without assuming any burden of proof it would not otherwise bear, Ardagh hereby asserts the following defenses.

**FIRST DEFENSE**

The Complaint fails to state a claim upon which relief can be granted.

**SECOND DEFENSE**

The alleged relevant product market definitions fail as a matter of law.

**THIRD DEFENSE**

The Complaint fails to allege a relevant geographic market.

**FOURTH DEFENSE**

The Acquisition will result in substantial merger-specific efficiencies and other procompetitive benefits that will benefit consumers and is procompetitive.

**FIFTH DEFENSE**

The contemplated relief would not be in the public interest because it would, among other things, harm consumers.

**SIXTH DEFENSE**

Ardagh has not knowingly or intentionally waived any applicable affirmative defenses. Ardagh presently lacks sufficient knowledge or information on which to form a belief as to whether it may have available additional, as yet unstated, affirmative defenses, and reserves the right to assert such additional defenses as they become known.

\* \* \*

WHEREFORE, having fully answered the Complaint, Ardagh respectfully requests that the Court: (i) deny the Commission's contemplated relief; (ii) dismiss the Complaint in its entirety with prejudice; (iii) award Ardagh its costs of suit, including expert's fees and reasonable attorneys' fees, as may be allowed by law; and (iv) award such other or further relief as the Court may determine is appropriate, just and proper.

Dated: New York, New York
       July 26, 2013

                              Respectfully Submitted,

                              */s/ Richard F. Schwed*
                              Richard F. Schwed
                              Alan S. Goudiss
                              Wayne Dale Collins
                              Lisl Joanne Dunlop
                              SHEARMAN & STERLING LLP
                              599 Lexington Avenue
                              New York, NY 10022
                              Telephone: (212) 848 4000
                              Facsimile: (212) 848 4173
                              agoudiss@shearman.com
                              rschwed@shearman.com
                              wcollins@shearman.com
                              ldunlop@shearman.com

                              Heather L. Kafele
                              SHEARMAN & STERLING LLP
                              801 Pennsylvania Avenue N.W.

Washington, DC 20004
Telephone: (202) 508 8000
Facsimile: (202) 508 8100
hkafele@shearman.com

*Counsel for Defendant Ardagh Group S.A.*