**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, )<br>)<br>   Plaintiff, )<br>       v. )<br>) <br>ARDAGH GROUP S.A. )<br>COMPAGNIE DE SAINT-GOBAIN , and )<br>SAINT-GOBAIN CONTAINERS, INC., )<br>)<br>   Defendants. )<br>) | Civil Action No.1:13-cv-01021 (RMC) |

**NON-PARTY THE SHIPYARD BREWING COMPANY'S**
**MOTION TO QUASH SUBPOENA**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, non-party The Shipyard Brewing Company, LLC, (hereinafter "Shipyard"), by and through undersigned counsel, respectfully moves to quash the Subpoena issued from this Court and served by Defendant Ardagh Group S.A. (hereinafter "Ardagh") on July 23, 2013.  As grounds therefore, Shipyard relies upon the memorandum of points and authorities and its accompanying exhibits filed contemporaneously with this Motion.

**CERTIFICATION OF COMPLIANCE WITH L. CIV. R. 7(m)**

Upon receipt of the subpoena, counsel for Shipyard, Paul J. Brunetti, engaged in discussions with counsel for Ardagh, Sara Ricciardi, concerning the scope of the documents sought in the subpoena.  As a result of multiple telephone conversations, the parties reached agreement on the scope of documents that Shipyard would provide, as memorialized in Mr. Brunetti's July 31, 2013 letter to Ms. Ricciardi and her response that same day.  Shipyard abided by this agreement and timely produced the promised documents and summaries.  Unfortunately, counsel for Ardagh withdrew its agreement on the scope of documents to be provided and has

indicated it may now insist upon the production of additional documents. Accordingly, Shipyard now files this Motion to Quash Subpoena.

Date: August 8, 2013                                          Respectfully submitted

                                                                    /s/ *John C. Eustice*
John C. Eustice (D.C. Bar. #984716)
MILLER & CHEVALIER CHARTERED
655 Fifteenth St. NW, Suite 900
Washington, DC 20005
Tel.: (202) 626-1492
Fax.: (202) 626-5801
Email: jeustice@milchev.com

Paul J. Brunetti (admitted *pro hac vice*)
MONCURE & BARNICLE
9 Bowdoin Mill Island
Topsham, ME 04086
Tel.: (207) 729-0856
Fax.: (207) 729-7790
Email: pbrunetti@mb-law.com

*Counsel for The Shipyard Brewing Company, LLC*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,           )<br>                                                              )<br>            Plaintiff,                              )<br>                  v.                                  )<br>                                                              )    Civil Action No.1:13-cv-01021 (RMC)<br>ARDAGH GROUP S.A.                      )<br>COMPAGNIE DE SAINT-GOBAIN , and  )<br>SAINT-GOBAIN CONTAINERS, INC.,  )<br>                                                              )<br>            Defendants.                         )<br>                                                              ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NON-PARTY THE SHIPYARD BREWING COMPANY'S MOTION TO QUASH SUBPOENA**

Non-party The Shipyard Brewing Company, LLC, (hereinafter "Shipyard"), respectfully submits this memorandum of points and authorities in support of its Motion to Quash Subpoena served by Defendant Ardagh Group S.A. (hereinafter "Ardagh"). The parties agreed upon a scope of production by Shipyard in response to the subpoena, and Shipyard produced those documents and summaries. Shipyard believes the matter should end there. However, following a call earlier today, counsel for Ardagh indicated it may now insist upon the production of additional, unspecified documents in response to its subpoena.

In addition, the subpoena violates Fed. R. Civ. P. 45 in demanding production of documents by a company located in Maine within the District of Columbia. Finally, the subpoena seeks a wide and broad array of documents seemingly untethered to the matters at issue in the above-captioned case. For these reasons, Shipyard respectfully requests that the Court quash the remainder of the subpoena and find that Shipyard has met all of its obligations relating thereto through the agreed-upon document production.

## OBJECTIONS AND RESPONSES TO THE SUBPOENA

Shipyard attaches Ardagh's subpoena as Exhibit 1 to this Memorandum. Because the parties engaged in discussions about the subpoena's scope immediately after it was served, Shipyard did not serve written objections to the subpoena. Because Ardagh has now indicated that it may insist upon the production of additional documents, Shipyard lodges the following objections, made subject to and without waiving its objections to venue and jurisdiction:

Document Request No. 1

All subpoenas, document requests, civil investigative demands, or any other formal or informal requests for the provision of information sent or made by the Commission to you in connection with the Proposed Transaction (a "Commission Information Request")

*Objections and Response No. 1*

*Shipyard OBJECTS to Document Request No. 1 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged communication, trade secrets, or other privileged information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information.*

Document Request No. 2

All documents or communications concerning any Commission Information Request, including correspondence with the Commission, documents or communications concerning your contemplated or actual response and/or documents or communications concerning any negotiation of the scope of your response.

*Objections and Response No. 2*

*Shipyard OBJECTS to Document Request No. 2 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged communication, trade secrets, or other privileged information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information*

*Notwithstanding its objection, and without waiving any privileges asserted, Shipyard does not have in its possession any such information requested in Document Request No. 2.*

2

Document Request No. 3

All documents that you provided or otherwise disclosed to the Commission in connection with any Commission Information Request, including without limitation business records or other documents created in the ordinary course of business, declarations, affidavits, affirmations, or any other formal or informal, sworn or unsworn, statement or testimony, and any drafts of or documents or communications related to or used in connection with preparing the foregoing.

*Objections and Response No. 3*

*Shipyard OBJECTS to Document Request No. 3 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged communication, trade secrets, or other privileged information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information*

*Notwithstanding its objection, and without waiving any privileges asserted, Shipyard does not have in its possession any such information requested in Document Request No. 3.*

Document Request No. 4

All documents or communications concerning the Proposed Transaction, Ardagh Group's acquisition of Anchor Glass Container Corporation, or Ardagh Group's acquisition of Leone Industries.

*Objections and Response No. 4*

*Shipyard OBJECTS to Document Request No. 4 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged communication, trade secrets, or other privileged information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information*

*Notwithstanding its objection, and without waiving any privileges asserted, Shipyard does not have in its possession any such information requested in Document Request No. 4.*

Document Request No. 5

Documents sufficient to identify every product that you produce and/or sell (including each size or volume produced and/or sold) utilizing bottles or other containers manufactured and/or sold by Ardagh Group, Saint-Gobain Containers, or any of Defendant's competitors, and for each product, documents sufficient to identify the suppliers of bottles or other containers used.

*Objections and Response No. 5*

*Shipyard OBJECTS to Document Request No. 5 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged trade secrets and information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information*

Document Request No. 6

All documents or communications concerning your current, projected, and/or historical business relationship with Ardagh Group, Saint-Gobain Containers, or any of Defendant's Competitors, including without limitation documents or communications concerning the allocation of the packaging of your products between Defendants, Defendants' Competitors, and facilities for the manufacture of glass beer bottles or beer containers made from materials other than glass that you own, operate, control, and/or in which you otherwise have an interest.

*Objections and Response No. 6*

*Shipyard OBJECTS to Document Request No. 5 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged trade secrets, research, and information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information*

Document Request No. 7

All documents or communications concerning your choice of packaging materials for your products, including without limitation your choice between glass or non-glass containers.

*Objections and Response No. 7*

*Shipyard OBJECTS to Document Request No. 7 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged trade secrets, research and information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information.*

Document Request No. 8

Documents or data sufficient to show, on a quarterly basis, contemplated or actual orders for, purchases of, or negotiations with respect to such orders for and/or purchases of glass beer

bottles or beer containers made from materials other than glass, and with respect to any order or purchase, documents sufficient to show: i) container material; ii) container size; iii) number of containers purchased; iv) whether a given container is stock or custom-made; v) whether a given container was obtained from a distributor or from a manufacturer; and vi) the brand(s) and product(s) packaged in a given container.

*Objections and Response No. 8*

*Shipyard OBJECTS to Document Request No. 8 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged trade secrets, research, and information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information. Document Request No. 8 seeks information which directly relates to Shipyard's proprietary and confidential sales information. The disclosure would be damaging to Shipyard.*

Document Request No. 9

Documents or data concerning the production of glass beer bottles or beer containers made from materials other than glass in any facilities that you own, operate, control, and/or otherwise have an interest in, including documents sufficient to show, on a quarterly basis: i) each facility's address; ii) each facility's production capacity, including a list of the types of containers that the facility can produce and annual capacity by container material; iii) each facility's volume by material, size, and end product or brand; iv) the date you began producing containers at each facility and any dates on which each facility's capacity was expanded, including a description of any expansion; v) pricing of containers by facility, material size, and end product or brand; vi) production in comparison to capacity by facility; vii) any actual or contemplated plans to expand, retrench, increase, or decrease production or capacity by facility; viii) any plans to expand or increase production or capacity through the construction or acquisition of additional facilities (including those that could be divested from Defendants or Defendants competitors); and ix) whether the facility was built by you or purchased from another person or entity.

*Objections and Response No. 9*

*Shipyard OBJECTS to Document Request No. 9 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged trade secrets, research, and information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information. Document Request No. 9 seeks information which*

*directly relates to Shipyard's proprietary and confidential sales information.  The disclosure would be damaging to Shipyard.*

Document Request No. 10

All documents or communications concerning: i) current, projected, and/or historical information regarding competition between, or the operations, pricing, or supply management of, Defendants and Defendants' competitors; ii) current, projected, and/or historical supply and demand for glass beer bottles; iii) current, projected, and/or historical supply and demand for beer containers made from materials other than glass; iv) current, projected, and/or historical levels of the use of beer containers made form materials other than glass; v) current, projected, and/or historical levels of imports from outside the United States of glass beer bottles and/or beer containers made from materials other than glass; vi) the impact of shipping distance on operations, competition, pricing, and/or supply management; viii) competition with other brewers with respect to container and packaging strategies and pricing; and, viii) any allocation of products that you sell based on end user characteristics and how such allocation I maintained through the channels of distribution (i.e. whether products that you sell are allocated either to retail or on-premise use).

*Objections and Response No. 10*

*Shipyard OBJECTS to Document Request No. 10 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged trade secrets, research, and information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information. Document Request No. 10 seeks information which directly relates to Shipyard's proprietary and confidential sales information.  The disclosure would be damaging to Shipyard.*

Document Request No. 11

All documents or communications concerning competition between and among Defendants and Defendants' competitors in connection with obtaining, securing, or seeking your business, including without limitation, documents, communications, or analysis relating to: i) the market share, competitive position, or relative strengths or weaknesses of Ardagh Group, Saint-Gobain Containers, or any of Defendants' Competitors; ii) attempts by Ardagh Group, Saint-Gobain Containers, or any of Defendant's Competitors to win your business from each other or other companies; iii) losses by Ardagh Group, Saint-Gobain Containers, or any of Defendants' Competitors of your business to each other or companies; iv) your allocation of the packaging of your products to or from entities that you own, operate, control, and/or otherwise have an interest in from or to Ardagh Group, Saint-Gobain Containers, or any of Defendants' Competitors; v) any instances in which you have switched or considered switching suppliers for a container for

6

one of your products; vi) any consideration of or decision to import glass beer bottles or beer containers made from materials other than glass from outside the United States; viii) any consideration of or decision to ship products in bulk to be packaged in other locations inside or outside the United States; and viii) any actual or potential effect on the supply, demand, cost, or price of glass beer bottles, beer containers made from materials other than glass, or your products as a result of competition between Ardagh Group, Saint-Gobain Containers, or any of Defendants' Competitors.

*Objections and Response No. 11*

*Shipyard OBJECTS to Document Request No. 11 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged trade secrets, research, and information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information.*

Document Request No. 12

All documents or communications concerning the price of glass beer bottles or beer containers made from materials other than glass (Specifying whether such price includes freight costs), including without limitation price quotes, price lists, pricing plans, pricing policies, pricing forecasts, pricing strategies, cost pass through clauses or agreements, pricing analyses, and pricing decisions.

*Objections and Response No. 12*

*Shipyard OBJECTS to Document Request No. 12 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged trade secrets, research, and information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information.*

Document Request No. 13

All documents or communications concerning the interchangeability of glass beer bottles and beer containers made from materials other than glass, including without limitation, all documents or communications concerning: i) the comparative costs, benefits, strengths, and/or weakness of glass, non-glass, glass imports, and/or non-glass imports as packaging material for your products; ii) any current, projected, and/or historical costs or delays associated with switching the packaging of your products from glass beer bottles to beer containers made from materials other than glass or vice versa; iii) any instances in which you marketed and/or sold a

product in a non-glass container; iv) any instances in which you switched or considered switching the packaging of any of your products from glass to non-glass containers; v) any analysis, studies, evaluations, market research, or surveys conducted, commissioned, or received by you evaluating the contribution of glass containers to the brand identity of your products or consumer preferences between glass beer bottles and beer containers made from materials other than glass; vi) any business plans, forecasts, or projections concerning your purchase or use of glass beer bottles, including without limitation such purchase or use as compared to purchase or use of beer containers made from materials other than glass; and viii) differences in prices charged to your customers as impacted by the material(s) used in packaging (i.e. glass beer bottles and beer containers made from materials other than glass.

***Objections and Response No. 13***

*Shipyard OBJECTS to Document Request No. 13 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged trade secrets, research, and information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information.*

Document Request No. 14

Documents or data sufficient to show, on a quarterly basis, freight costs incurred in shipping glass beer bottles or beer containers made from materials other than glass for your products, including documents or communications concerning any policy or preference for purchasing packaging for your products from entities with closer geographic proximity to your relevant facilities.

***Objections and Response No. 14***

*Shipyard OBJECTS to Document Request No. 14 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged trade secrets, research, and information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information. Document Request No. 14 seeks information which directly relates to Shipyard's proprietary and confidential sales information.  The disclosure would be damaging to Shipyard.*

Document Request No. 15

All documents or communications concerning any plans to: (i) consider, sponsor, or award a long-term contract to a supplier of glass bottles or beer containers made from materials

other than glass that might open a new plant or reopen a previously closed plant; or (ii) invest in or open a facility with glass container manufacturing capacity.

*Objections and Response No. 15*

*Shipyard OBJECTS to Document Request No. 15 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged trade secrets, research and information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information.*

Documents Request No. 16

If you currently package any brand or product in glass containers as well as non-glass containers, all documents, data, analyses, evaluations, and market research concerning: (i) actual realized prices (including comparisons based on equivalent volume – e.g., 12 ounce bottles) to each customer by product and container material type; (ii) pricing and promotion policies for glass and non-glass containers; (iii) comparisons of margins for glass and non-glass containers; and (iv) evaluation of sales volumes for glass and non-glass containers.

*Objections and Response No. 16*

*Shipyard OBJECTS to Document Request No. 16 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged trade secrets, research, and information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information. Document Request No. 16 seeks information which directly relates to Shipyard's proprietary and confidential sales information.  The disclosure would be damaging to Shipyard.*

**Document Request No. 17**

All documents or communications relating to obtaining glass beer bottles or beer containers made from materials other than glass from distributors, including: (i) all documents or communications discussing the considerations in switching to or from direct purchases to purchases through distributors; (ii) the name and address of any distributor from which you have obtained containers; (iii) the annual volume of containers purchased from distributors for each container material and container size; (iv) the producer of any containers acquired through distributors; and (v) the name of the brands and products that you have packaged in containers obtained from distributors.

*Objections and Response No. 17*

*Shipyard OBJECTS to Document Request No. 17 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged trade secrets, research, and information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information.*

Document Request No. 18

All documents or communications concerning the use of co-packers to package any of your products, including: (i) all documents or communications discussing the considerations in using co-packers, including costs, logistics, and any other issues; (ii) the name and address of any co-packer who bottles any of your products; (iii) the annual volume of product bottles on your behalf by co-packers; and (iv) the name of the brands and products that are bottled on your behalf by co-packers.

*Objections and Response No. 18*

*Shipyard OBJECTS to Document Request No. 18 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged trade secrets, research, and information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information. Document Request No. 18 seeks information which directly relates to Shipyard's proprietary and confidential sales information.  The disclosure would be damaging to Shipyard.*

Document Request No. 19

All documents or communications concerning facilities for filing glass and non-glass containers including documents sufficient to show: (i) the address of each facility; (ii) the capacity of each facility; (iii) whether and to what extent capacity can be increased at each facility; (iv) costs associated with capacity expansion; (v) whether the facility can switch between filling glass containers to non-glass containers and vice versa; and (vi) costs associated with switching between filling glass containers and non-glass containers and vice versa.

*Objections and Response No. 19*

*Shipyard OBJECTS to Document Request No. 19 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged trade secrets, research, and information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely*

10

*available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information.*

## ARGUMENT

1. Shipyard is a Maine limited liability company with a primary place of business of 86 Newbury St. Portland, Maine 04101.

2. Shipyard is principally engaged in the business of manufacturing and selling beer and soda.

3. Shipyard is not a party to the above-captioned matter.

4. Shipyard has only purchased a minimal number of products from the above-named Defendants over the relevant time period.

5. Defendant Ardagh served this Discovery request upon Shipyard on July 23, 2013 at or around 3:00 PM.

6. Ardagh provided Shipyard with no advance notice of this subpoena.

7. Ardagh included a return date of July 30, 2013.

8. Production of the volume of data requested by Defendants is unduly burdensome to Shipyard.

9. The expedited timing of Defendants' request is unduly burdensome to Shipyard.

10. Ardagh's subpoena is jurisdictionally deficient under Fed. R. Civ. P. 45 because it demands production of documents in Washington, D.C. Accordingly, the distance required for Shipyard to respond to Defendant's request, or otherwise to respond and object to the subpoena is unduly burdensome, since its offices in Portland, Maine are more than one hundred (100) miles from Washington, D.C.

11

11. Service of the subpoena was also improper pursuant to Fed. R. Civ. P. 45(b)(2)(A) and (B), as the subpoena was issued in the District Court of the District of Columbia, and not in the District of Maine, which retains personal jurisdiction over Shipyard.

12. In response to Shipyard's arguments listed in Paragraphs 10 and 11, counsel for Ardagh cited the Stipulated Joint Proposed Scheduling in this case, DE 29 ¶ 31, which states that "[g]ood cause having been shown in view of the geographic dispersion of potential witnesses in this action, the Parties will be allowed nationwide service of discovery and trial subpoenas pursuant to Fed. R. Civ. P. 45 and 15 U.S.C. § 23." However, the cited statute only allows for national service of subpoena "for witnesses who are required to attend a court of the United States" in relation to a case "arising under the antitrust laws." The statute does not allow for service and enforcement of a subpoena *duces tecum* demanding production of documents outside of the issuing court's jurisdiction.

13. The territorial restriction of Rule 45 was included "to protect [non-party] witnesses from being subjected to excessive discovery burdens in litigation in which they have little or no interest." *In re Edelman*, 295 F.3d 171, 178 (2d Cir. 2002) (citing *Price Waterhouse LLP v. First Am. Corp.*, 182 F.R.D. 56, 62 (S.D.N.Y. 1998)). This concern is implicated here.

14. In addition, Shipyard is concerned that disclosure of such information contained in Defendants' request will result in the dissemination of privileged and confidential information, trade secrets, and research.

15. Shipyard is concerned that the protective order issued by the Court in this case does not guarantee protection of confidential or privileged information, because it allows a party to override a confidentiality or privilege assertion. This process requires the entity seeking to protect a privilege to then spend additional time and expense to fight this assertion. This process

may work when the documents at issue belong to a *party* to this action, but it is unduly burdensome when they belong to a non-party, such as Shipyard.

16. Upon receipt of Ardagh's subpoena on July 23, 2013, Shipyard contacted Ardagh in a timely manner to indicate its objections to the subpoena, and its intention, if necessary, to file such objections. Shipyard also communicated its desire not to be involved in this matter moving forward.

17. Counsel for Shipyard and Ardagh, along with counsel for Plaintiff Federal Trade Commission ("FTC") engaged in multiple telephone conversions in a good faith effort to resolve all scope issues.

18. Ultimately, Shipyard sent a letter dated July 31, 2013, to Ardagh and the FTC agreeing to produce certain documents and summaries in response to Ardagh's subpoena and the FTC's subpoena.[1] *See* Exhibit 2. Counsel for FTC agreed to the scope of production offered by Shipyard. *See* Exhibit 3. Counsel for Ardagh also agreed to the scope of production. *See* Exhibit 4. Indeed, Ardagh's response included the following representation: "**Based on your representations, Ardagh is willing to accept this proposal.** We would, however, separately like to discuss issues related to the case and the industry. I believe you had mentioned that Brandon [Mazer, General Counsel at Shipyard] could speak to some of those issues. Thank you for your efforts on this." *Id.* (emphasis added).

19. The agreed-upon return date for production of the documents and summaries listed in Shipyard's July 31, 2013 letter was August 8, 2013. *See* Exhibits 3 and 4. Shipyard agreed to compile and produce the agreed-upon documents on that date. *See* Exhibit 5.

---

[1] Shipyard is filing a Motion to Quash the FTC's subpoena in the District of Maine, which is the Court that issued that subpoena.

13

20.     On August 5, 2013, Ardagh notified Shipyard and counsel by email that an additional deposition subpoena would be forthcoming. Ardagh served that subpoena on August 7, in response to which Shipyard is filing contemporaneously a second Motion to Quash.

21.     Prior to August 5, 2013, Ardagh's counsel never contacted Shipyard concerning a potential deposition subpoena or the scope of any proposed examination, even though Ardagh's counsel had agreed to discuss such issues prior to service of such a subpoena.

22.     Shipyard, again in good faith, contacted Ardagh to discuss both the document and deposition subpoenas, to seek a resolution of them without requiring its involvement in the formal discovery process.

23.     Ardagh's counsel informed Shipyard and its counsel on a conference call August 8, 2013, that it would not relieve Shipyard of its obligations under the July 23, 2013 document subpoena or the August 5, 2013 deposition subpoena, despite the parties' understanding.

24.     Shipyard nonetheless abided by its agreement memorialized in its July 31, 2013 letter and produced the documents and summaries listed in that letter to both Ardagh and the FTC.

25.     To date, Shipyard has incurred considerable and unanticipated expense in defending against Ardagh's jurisdictionally improper and overly broad subpoena, which will continue to unjustly grow as its involvement continues.

## CONCLUSION

For the foregoing reasons, Shipyard respectfully requests that the Court quash Ardagh's July 23, 2013 subpoena, and provide such other relief as this Court deems just and proper.

Date:  August 8, 2013                                  Respectfully submitted

                                                                             /s/ *John C. Eustice*
                                                                        John C. Eustice (D.C. Bar. #984716)
                                                                        MILLER & CHEVALIER CHARTERED
                                                                        655 Fifteenth St. NW, Suite 900
                                                                        Washington, DC 20005
                                                                        Tel.: (202) 626-1492
                                                                        Fax.: (202) 626-5801
                                                                        Email: jeustice@milchev.com

                                                                        Paul J. Brunetti (admitted *pro hac vice*)
                                                                        MONCURE & BARNICLE
                                                                        9 Bowdoin Mill Island
                                                                        Topsham, ME 04086
                                                                        Tel.: (207) 729-0856
                                                                        Fax.: (207) 729-7790
                                                                        Email: pbrunetti@mb-law.com

                                                                        *Counsel for The Shipyard*
                                                                        *Brewing Company, LLC*