UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, )<br>)<br>    Plaintiff, )<br>          v. )<br>)<br>ARDAGH GROUP S.A. )<br>COMPAGNIE DE SAINT-GOBAIN , and )<br>SAINT-GOBAIN CONTAINERS, INC., )<br>)<br>    Defendants. )<br>) | Civil Action No.1:13-cv-01021 (RMC) |

### NON-PARTY THE SHIPYARD BREWING COMPANY'S
### MOTION TO QUASH SUBPOENA

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, non-party The Shipyard Brewing Company, LLC, (hereinafter "Shipyard"), by and through undersigned counsel, respectfully moves to quash the Subpoena issued from this Court and served by Defendant Ardagh Group S.A. (hereinafter "Ardagh") on August 7, 2013.[1]  As grounds therefore, Shipyard relies upon the memorandum of points and authorities and its accompanying exhibits filed contemporaneously with this Motion.

### CERTIFICATION OF COMPLIANCE WITH L. CIV. R. 7(m)

Upon receipt of the first subpoena served by Ardagh, counsel for Shipyard, Paul J. Brunetti, engaged in discussions with counsel for Ardagh, Sara Ricciardi, concerning the scope of the documents sought in the subpoena.  As a result of multiple telephone conversations, the parties reached agreement on the scope of documents that Shipyard would provide, as memorialized in Mr. Brunetti's July 31, 2013 letter to Ms. Ricciardi and her response that same day.  Shipyard abided by this agreement and timely produced the promised documents and

---

[1] Shipyard also received a document subpoena from Ardagh on July 23, 2013.  That subpoena is the subject of a contemporaneously filed Motion to Quash.

summaries. Unfortunately, counsel for Ardagh withdrew its agreement on the scope of documents to be provided and has indicated it may now insist upon the production of additional documents. In addition, Ardagh issued an additional subpoena seeking a deposition pursuant to Fed. R. Civ. P. 45 and 30(b)(6), listing twelve separate topics on which Shipyard must produce a witness or witnesses to testify beginning at 9:00 a.m. on Monday, August 12, 2013. Counsel for the parties spoke on August 8, 2013, but could not resolve the document subpoena or the deposition subpoena. Accordingly, Shipyard now files this Motion to Quash Subpoena.

Date: August 8, 2013                                                 Respectfully submitted

                                                        /s/ *John C. Eustice*
John C. Eustice (D.C. Bar. #984716)
MILLER & CHEVALIER CHARTERED
655 Fifteenth St. NW, Suite 900
Washington, DC 20005
Tel.: (202) 626-1492
Fax.: (202) 626-5801
Email: jeustice@milchev.com

Paul J. Brunetti (admitted *pro hac vice*)
MONCURE & BARNICLE
9 Bowdoin Mill Island
Topsham, ME 04086
Tel.: (207) 729-0856
Fax.: (207) 729-7790
Email: pbrunetti@mb-law.com

*Counsel for The Shipyard Brewing Company, LLC*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Civil Action No.1:13-cv-01021 (RMC) |
| ARDAGH GROUP S.A. ) | |
| COMPAGNIE DE SAINT-GOBAIN , and ) | |
| SAINT-GOBAIN CONTAINERS, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NON-PARTY THE SHIPYARD BREWING COMPANY'S MOTION TO QUASH SUBPOENA

Non-party The Shipyard Brewing Company, LLC, (hereinafter "Shipyard"), respectfully submits this memorandum of points and authorities in support of its Motion to Quash Subpoena served by Defendant Ardagh Group S.A. (hereinafter "Ardagh") seeking testimony from Shipyard. After service of Ardagh's July 23, 2013 subpoena seeking documents, the parties agreed upon a scope of production by Shipyard in response to that subpoena, and Shipyard produced those documents and summaries. Shipyard also allowed counsel for Ardagh to discuss various industry issues with Shipyard General Counsel Brandon Mazer. Shipyard believes the matter should end there. However, Ardagh decided to serve additional burdensome discovery on non-party Shipyard in the form of a deposition subpoena issued from this Court and served on August 7, 2013, demanding Rule 30(b)(6) testimony from Shipyard on twelve topics. After attempting to resolve the subpoena earlier today, counsel for Ardagh indicated it will seek to enforce its overly broad deposition subpoena.

Ardagh's subpoena violates Fed. R. Civ. P. 45 in demanding that Shipyard, a company located in Maine, produce a witness or witnesses to testify in the District of Columbia. In

addition, the subpoena seeks testimony on a wide and broad array of subjects seemingly untethered to the matters at issue in the above-captioned case.  Many of these topics implicate Shipyard's privileged and confidential information, trade secrets, and research.  For these reasons, Shipyard respectfully requests that the Court quash the subpoena.

## OBJECTIONS AND RESPONSES TO THE SUBPOENA

Shipyard attaches Ardagh's deposition subpoena as Exhibit 1 to this Memorandum.  Shipyard lodges the following objections to Schedule A of the subpoena (proposed Topics on Which Witness will Testify), made subject to and without waiving its objections to venue and jurisdiction:

Topic No. 1

Competition in the production, packaging, distribution, marketing and/or selling of glass beer or spirits bottles, including competition with non-glass beer or spirits containers and vice versa.

***Objections and Response to Topic No. 1***

*Shipyard OBJECTS to Topic No.  1  on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged communication, trade secrets, or other privileged information.  Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information.*

Topic No. 2

Your purchases of glass beer or spirits bottles and/or non-glass beer or spirits containers in connection with the production, packaging, distribution, marketing and/or selling of beer or spirits.

***Objections and Response to Topic No. 2***

*Shipyard OBJECTS to Topic No.  2  on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged communication, trade secrets, or other privileged information.  Furthermore, Shipyard is not a party to this action, similar and sufficient*

2

*information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information.*

Topic No. 3

The comparative costs, benefits, strengths and/or weaknesses of glass imports, and/or non-glass imports as packaging material for beer and/or spirits, including their respective interchangeability.

**Objections and Response to Topic No. 3**

*Shipyard OBJECTS to Topic No 3 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged communication, trade secrets, or other privileged information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information.*

Topic No. 4

The viability and/or costs or delays associated with switching the packaging of your products from glass beer and/or spirits bottles to non-glass beer and/or spirits containers and vice versa.

**Objections and Response to Topic No. 4**

*Shipyard OBJECTS to Topic No. 4 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged communication, trade secrets, or other privileged information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information.*

Topic No. 5

The contribution of container materials to brand identity or consumer preferences for beer or spirits, including consumer preferences between glass beer or spirits bottles and non-glass beer or spirits containers.

**Objections and Response to Topic No. 5**

*Shipyard OBJECTS to Topic No. 5 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged communication, trade secrets, or other privileged information. Furthermore, Shipyard is not a party to this action, similar and sufficient*

*information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information.*

Topic No. 6

Your strategic analysis and/or long range plans with respect to the "mix" of your products offered in non-glass beer or spirits containers as opposed to glass beer or spirits bottles, including any research and development or marketing initiatives to develop and popularize non-glass beer or spirits containers.

**Objections and Response to Topic No. 6**

*Shipyard OBJECTS to Topic No. 6 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged communication, trade secrets, or other privileged information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information.*

Topic No. 7

Your analysis of trends, customer profiles, distribution channels, and input requirements by beer and/or spirits market segment (such as "mass" beer, imports, and craft beers).

**Objection and Response to Topic No. 7**

*Shipyard OBJECTS to Topic No. 7 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged communication, trade secrets, or other privileged information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information.*

Topic No. 8

Your contracts with suppliers of glass beer and/or spirits bottles and non-glass beer and/or spirits containers since January 1, 2008, including details regarding each negotiation phase for each contract (e.g., requests for proposals, draft proposals, bids received, and analyses of bids received).

**Objections and Response to Topic No. 8**

*Shipyard OBJECTS to Topic No. 8 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged communication, trade secrets, or other privileged*

4

*information.  Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information.*

Topic No. 9

Any outstanding requests for proposal or competitive bids for glass beer and/or spirits bottles and non-glass beer and/or spirits containers.

*Objections and Response to Topic No. 9*

*Shipyard OBJECTS to Topic No. 9 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged communication, trade secrets, or other privileged information.  Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information.*

Topic No. 10

Your criteria or requirements for determining whether a supplier of glass beer and/or spirits bottles or non-glass beer and/or spirits containers is acceptable (*e.g.* proximity, quality, service, and price) as well as any evaluation of any supplier's past or present performance.

*Objections and Response to Topic No. 10*

*Shipyard OBJECTS to Topic No. 10 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged communication, trade secrets, or other privileged information.  Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information.*

Topic No. 11

Your efforts to incentivize or induce consumers to switch from glass and/or spirits bottles to non-glass beer and/or spirits containers and vice versa.

*Objections and Response to Topic No. 11*

*Shipyard OBJECTS to Topic No.  11 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged communication, trade secrets, or other privileged information.  Furthermore, Shipyard is not a party to this action, similar and sufficient*

*information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information.*

Topic No. 12

Your assessment of the likely competitive impact of the Proposed Transaction.

*Objections and Response to Topic No. 12*

*Shipyard OBJECTS to Topic No. 12 on the basis that it is overly-broad, unduly burdensome, unlikely to result in the production of any evidence admissible at trial, and likely to result in the production of privileged communication, trade secrets, or other privileged information. Furthermore, Shipyard is not a party to this action, similar and sufficient information is likely available from parties to this action, and Shipyard will incur significant inconvenience and expense in providing such information.*

## ARGUMENT

1. Shipyard is a Maine limited liability company with a primary place of business of 86 Newbury St. Portland, Maine 04101.

2. Shipyard is principally engaged in the business of manufacturing and selling beer and soda.

3. Shipyard is not a party to the above-captioned matter.

4. Shipyard has only purchased a minimal number of products from the above-named Defendants over the relevant time period.

5. Defendant Ardagh served this Discovery request upon Shipyard *Ad Testificandum* on August 7, 2013.

6. Ardagh included a deposition date of Monday, August 12, 2013.

7. Production of a witness or witnesses to testify on the twelve broad topics enumerated by Ardagh is unduly burdensome to Shipyard.

8. The expedited timing of Ardagh's request is unduly burdensome to Shipyard.

9. Ardagh's subpoena is jurisdictionally deficient under Fed. R. Civ. P. 45 because it demands production of a witness or witnesses in Washington, D.C.  Accordingly, the distance required for Shipyard to respond to Defendant's request, or otherwise to respond and object to the subpoena is unduly burdensome, since its offices in Portland, Maine are more than one hundred (100) miles from Washington, D.C.

10. Service of the subpoena was also improper pursuant to Fed. R. Civ. P. 45(b)(2)(A) and (B), as the subpoena was issued in the District Court of the District of Columbia, and not in the District of Maine, which retains personal jurisdiction over Shipyard.

11. In response to Shipyard's arguments listed in Paragraphs 10 and 11, which were discussed in relation to Ardagh's July 31, 2013 document subpoena, counsel for Ardagh cited the Stipulated Joint Proposed Scheduling in this case, DE 29 ¶ 31, which states that "[g]ood cause having been shown in view of the geographic dispersion of potential witnesses in this action, the Parties will be allowed nationwide service of discovery and trial subpoenas pursuant to Fed. R. Civ. P. 45 and 15 U.S.C. § 23."  However, the cited statute only allows for national service of subpoena "for witnesses who are required to attend a court of the United States" in relation to a case "arising under the antitrust laws."  In other words, trial testimony.  The statute does not allow for service and enforcement of a subpoena demanding a Rule 30(b)(6) deposition from a company outside of the issuing court's jurisdiction.

12. Rule 45 provides that, on timely motion, "the issuing court *must* quash or modify a subpoena" that "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed or regularly transacts business in person." Fed. R. Civ. P. 45(c)(3)(A)(ii) (emphasis added).  Here, any knowledgeable Shipyard

witness would be required to travel more than 100 miles to testify in the District of Columbia. No modification to the subpoena could cure this violation.

13. Courts in this District have recognized that a non-party cannot be "required to travel to a place more than 100 miles from the place where that person resides, is employed, or regularly transacts business in person." *Godfrey v. Iverson*, CA No. 05-2044 (ESH), 2007 U.S. Dist. LEXIS 43269, at *4 (D.D.C. June 15, 2007) (granting motion to quash non-party subpoena); *see also Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 34 F. Supp. 2d 28, 46 n.14 (D.D.C. 1998) (holding court-ordered oversight of discovery could not extend to depositions of non-parties who reside outside of 100 miles from the District of Columbia). The territorial restriction of Rule 45 was included "to protect [non-party] witnesses from being subjected to excessive discovery burdens in litigation in which they have little or no interest." *In re Edelman*, 295 F.3d 171, 178 (2d Cir. 2002) (citing *Price Waterhouse LLP v. First Am. Corp.*, 182 F.R.D. 56, 62 (S.D.N.Y. 1998)). This concern is implicated here.

14. In addition, Shipyard is concerned that disclosure of the information sought in Ardagh's deposition subpoena will result in the dissemination of privileged and confidential information, trade secrets, and research.

15. Shipyard is concerned that the protective order issued by the Court in this case does not guarantee protection of confidential or privileged information, because it allows a party to override a confidentiality or privilege assertion. This process requires the entity seeking to protect a privilege to then spend additional time and expense to fight this assertion. This process may work when the information at issue belongs to a *party* to this action, but it is unduly burdensome when it belongs to a non-party, such as Shipyard.

16. Upon receipt of Ardagh's first subpoena on July 23, 2013, which sought production of documents, Shipyard contacted Ardagh in a timely manner to indicate its objections to the subpoena, and its intention, if necessary, to file such objections. Shipyard also communicated its desire not to be involved in this matter moving forward.

17. Counsel for Shipyard and Ardagh, along with counsel for Plaintiff Federal Trade Commission ("FTC") engaged in multiple telephone conversions in a good faith effort to resolve all scope issues relating to the document subpoena.

18. Ultimately, Shipyard sent a letter dated July 31, 2013, to Ardagh and the FTC agreeing to produce certain documents and summaries in response to Ardagh's document subpoena and the FTC's document subpoena.[2]  *See* Exhibit 2.  Counsel for FTC agreed to the scope of production offered by Shipyard.  *See* Exhibit 3.  Counsel for Ardagh also agreed to the scope of production.  *See* Exhibit 4.  Indeed, Ardagh's response included the following representation:  "***Based on your representations, Ardagh is willing to accept this proposal.***  We would, however, separately like to discuss issues related to the case and the industry.  I believe you had mentioned that Brandon [Mazer, General Counsel at Shipyard] could speak to some of those issues.  Thank you for your efforts on this."  *Id.* (emphasis added).

19. On August 5, 2013, Ardagh notified Shipyard and counsel by email that, despite Ardagh's agreement with Shipyard to limit the scope of the document subpoena and offer to make Mr. Mazer available for a discussion, an additional deposition subpoena would be forthcoming.  *See* Exhibit 5.  Ardagh served that subpoena *Ad Testificandum* on August 7, 2013.

---

[2] Shipyard is filing a Motion to Quash the FTC's subpoena in the District of Maine, which is the Court that issued that subpoena.

20. Prior to August 5, 2013, Ardagh's counsel never contacted Shipyard concerning a potential deposition subpoena or the scope of any proposed examination, even though Ardagh's counsel had agreed to discuss such issues prior to service of such a subpoena.

21. Shipyard, again in good faith, contacted Ardagh to discuss both the document and deposition subpoenas, to seek a resolution of them without requiring its involvement in the formal discovery process.

22. Ardagh's counsel informed Shipyard and its counsel on a conference call August 8, 2013, that it would not relieve Shipyard of its obligations under the July 23, 2013 document subpoena or the August 7, 2013 deposition subpoena, despite the parties' understanding.

23. Shipyard nonetheless abided by its agreement memorialized in its July 31, 2013 letter and produced the documents and summaries listed in that letter to both Ardagh and the FTC.

24. To date, Shipyard has incurred considerable and unanticipated expense in defending against Ardagh's jurisdictionally improper and overly broad subpoenas, which will continue to unjustly grow as its involvement continues.

## **CONCLUSION**

For the foregoing reasons, Shipyard respectfully requests that the Court quash Ardagh's August 7, 2013 deposition subpoena, and provide such other relief as this Court deems just and proper.

Date:  August 8, 2013                              Respectfully submitted

                                                               /s/ *John C. Eustice*
John C. Eustice (D.C. Bar. #984716)
MILLER & CHEVALIER CHARTERED
655 Fifteenth St. NW, Suite 900
Washington, DC 20005
Tel.: (202) 626-1492
Fax.: (202) 626-5801
Email: jeustice@milchev.com

Paul J. Brunetti (admitted *pro hac vice*)
MONCURE & BARNICLE
9 Bowdoin Mill Island
Topsham, ME 04086
Tel.: (207) 729-0856
Fax.: (207) 729-7790
Email: pbrunetti@mb-law.com

*Counsel for The Shipyard*
*Brewing Company, LLC*